UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                               Case No. 16-CR-81-pp

MARY CAIRO,

        Defendant.

**ORDER GRANTING DEFENDANT'S *PRO SE* MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 3)**

On May 18, 2010, after she had pled guilty to one count of bank robbery by force or violence, Judge Samuel Der-Yeghiayan of the Northern District of Illinois sentenced defendant Mary Cairo to sixty-three months in prison and three years of supervised release. Dkt. No. 1. The defendant began her supervised release term in February of 2015, and on May 26, 2016, District Judge J.P. Stadtmueller of the Eastern District of Wisconsin entered an order transferring jurisdiction of the defendant's supervised release to this district. Id. Her supervised release term is scheduled to expire on February 16, 2018. Dkt. No. 5 at 2.

On March 8, 2017, the defendant filed this motion, asking the court to terminate her supervised release early. Dkt. No. 3. The motion indicated that the defendant now volunteers at her church, has made amends with her children and husband of 43 years (who passed away in April of 2016), is taking

medication for her depression (she indicates that she was in a "fugue state" at the time she committed this offense in 2007), and took leadership roles in prison programs when she was in custody. Id.

The defendant's probation officer filed a memorandum, indicating that he supported the defendant's motion for early termination. Dkt. No. 5. The officer noted that the defendant had had no violations of her release conditions; that she had maintained residential and financial stability; that she had submitted to and passed random urinalysis tests throughout her supervision period; and that she had completed and continued to undergo mental health counseling sessions. Id. at 1-2. The probation department classifies her as a low risk to reoffend. Id. at 2. The probation officer attached to his report several letters from members of her church and the local community, confirming her involvement in the church and her volunteer work with a women's center in Chicago. Dkt. No. 5-1.

On April 7, 2017—ten months ahead of the defendant's supervised release expiration date—the government filed an objection to the motion. Dkt. No. 6. The government argued that it was not enough for a defendant to behave herself, or to follow the conditions of her supervised release, in order to obtain early termination. Dkt. No. 6 at 2. The government submits that the defendant failed to carry her burden of proving that the court has reason to terminate her supervision early. Id. at 2-3. Specifically, the prosecutor points the court to the defendant's offense conduct—she brought a gun into a bank, ordered people onto the floor, fled the scene with $20,000.00, and had to be ordered by the

arresting officer to drop the gun. Dkt. No. 6 at 2. The government agrees that the presentence report confirms the defendant's assertion that she was in the midst of a severe depression at the time she committed this offense, and agrees that she has received, and continues to receive, treatment. Id. at 2-3. But the prosecutor, noting that the burden was on the defendant, contended that the defendant's offense was very serious, that she had less than a year left on her supervision term, and that the depression which caused her involvement in the offense was severe. Id. at 3.

Under 18 U.S.C. §3583(e)(1), a district court may terminate a defendant's supervised release after the defendant has served at least one year if, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the court finds that early termination is "warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. §3583(e)(1). Judge Lynn Adelman considered this provision in United States v. O'Hara, Case No. 00-cr-170, 2011 WL 4356322 (E.D. Wis. Sept. 16, 2011), and paraphrased it as containing three requirements:

> (1) the defendant has served at least one year of supervision;
> (2) the government is given notice and an opportunity to be heard; and
> (3) termination is in the interest of justice based on the pertinent § 3553(a) factors and the defendant's conduct.

United States v. O'Hara, No. 00-CR-170, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011) (citing United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998) and United States v. Lowe, 632 F.3d 996, 998-99 (7th Cir. 2011)). While noting that district courts "possess[] wide discretion in making

3

[the] determination [whether to terminate supervised release early,]" Judge Adelman cautioned that courts have held "that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination." O'Hara, 2011 WL 4356322, at *3 (collecting cases). The defendant carries the burden of proving that she has done more than just follow the rules. Id., citing United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). The district court need not make explicit findings on each of the relevant §3553(a) factors, but must give some indication that it considered those factors. See Lowe, 632 F.3d at 998, citing United States v. Carter, 408 F.3d 852, 854 (7th Cir. 2005); United States v. Hale, 107 F.3d 526, 530 (7th Cir. 1997); and United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003).

The defendant has been on supervised release for longer than one year, and the court gave the government notice and the opportunity to respond to the motion (which it has done). The issue, then, is whether early termination is in the interest of justice, based on the §3553(a) factors and the defendant's own conduct.

The first §3553(a) factor is the seriousness of the offense, and there is no question that the defendant's offense was serious. Her conduct in 2007 not only put the people in that bank at risk for their safety and their lives, but likely left many of them with lingering emotional scars. In the federal system, armed bank robbery is among the most serious of crimes for that very reason.

4

That factor, then, does not weigh in favor of early termination of release, as the government has argued.

The second §3553(a) factor is the defendant's personal history and characteristics. The defendant and her probation officer look to this factor in support of early termination. The defendant proffers that she was suffering from a bout of severe depression during the commission of her crime. Dkt. No. 3 at 3. Thus, it is important for the court to ask whether she has taken steps to address that depression. The probation officer confirms the defendant's assertions that she has taken her depression seriously, and has been engaged in treatment for it. The government acknowledges this fact. This is an indication to the court that she knows how serious her offense was, and that she has put in real work to address the source of her actions.

Another facet of the defendant's history and characteristics is how she has chosen to spend her time on supervised release. It is true that the probation officer's report shows that she has had no violations, but it is also true that simply following the conditions of release is not sufficient to support early termination. The defendant has done more, however, than simply abide by the conditions of her release. Her deep involvement in her church—the Eucharist ministry, her work with the prayer shawl program, her needlework for those in need, her baking during the Lenten season—show that she has chosen to spend her time on release in positive ways that help others. While she was still under supervision in the Northern District of Illinois, she volunteered at the Women's Center of Greater Chicagoland one to two times a

week. Dkt. No. 5-1 at 4. Even while she was in custody, she was involved in volunteer programming such as alter service at prison mass, knitting projects, sponsoring confirmation candidates, and participating on suicide watch. Such positive, others-based activities go beyond simply behaving oneself and following the rules. In contrast to the defendant in O'Hara, who complied with the rules, paid the fine and avoided substance abuse but did no more, O'Hara, 2011 WL 4356322 at *3, this defendant has reached out to others, and tried to use her experiences to help others.

The defendant makes reference to the fact that she made amends with her estranged husband before he died, and with her children (she attaches a photo of her with her children at a Thanksgiving celebration), and the court is glad of that. A strong support system gives a person a fallback when life's stresses become overwhelming, and the fact that the defendant values her family says something about her character. That, in itself, however, is not enough to justify early termination. It is, in the court's view, more significant that she has chosen to spend her time on supervised release trying to help others, that makes her case different.

The defendant has not indicated why she is asking for early termination—she does not state that abiding by the conditions is burdensome, or prevents her from doing certain things (such as gaining employment). That is a factor that many courts consider, and it is not present here. But, the court notes, at this point, the defendant has served two and a half years of a three-

year term; she is closer to termination than she was when she filed the motion (in great part due to this court's case load).

There are three other §3553(a) factors that are relevant: the need to deter others from engaging in the kind of conduct the defendant engaged in, the need to protect the public from her, and any rehabilitation continued supervision might provide. As to deterrence, the court suspects that the significant prison term Judge Der-Yeghiayan imposed served more of this function than requiring the defendant to serve out the last six months of her supervised release term. As to protection of the public, the government argues that the defendant has not proven that she is not a continued danger. The court believes that the defendant has taken steps to ameliorate the source of the danger she posed, by addressing her depression and by involving herself in work for others. Finally, as to rehabilitative needs, the probation office has provided the defendant with programming, and the defendant has taken advantage of it. In particular, she has taken advantage of the mental health treatment and counseling component. At some point—whether today, or six months from now—the defendant will have to do what is right and healthy for her and for the community on her own, without the threat of revocation hanging over her. Probation has provided her with the tools to continue her progress on her own; the court hopes that she will choose to do exactly that.

The court finds, therefore, that the defendant's conduct, and the §3553(a) factors, weigh in favor of the court taking the unusual step of

terminating the defendant's supervised release six months early.

The court **GRANTS** the defendant's motion for early termination of supervised release. Dkt. No. 3.

Dated in Milwaukee, Wisconsin this 14th day of August, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**